IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **WILLIAM HORN and SVETLANA GRACH**, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>**DOVENMUEHLE MORTGAGE, INC.**<br><br>*Defendant.* | Case No. 1:23-cv-08764<br><br>District Judge:<br>Hon. Jeffrey I. Cummings<br><br>Magistrate Judge:<br>Hon. Beth W. Jantz |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs WILLIAM HORN and SVETLANA GRACH, on behalf of themselves and all others similarly situated, complaining of Defendant DOVENMUEHLE MORTGAGE, INC., respectfully allege as follows:

### I. INTRODUCTION

1. Plaintiffs bring this lawsuit on behalf of themselves and others like them who disputed inaccurate mortgage payment history information that Defendant furnished about them to consumer reporting agencies ("CRAs"), commonly called "credit reporting agencies."

2. Defendant's systematic failure to correct or delete this inaccurate information that is disputed violates section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, a federal statute.

3. Defendant is a mortgage servicer. When a consumer's mortgage loan payments have been modified pursuant to an agreement between the consumer and his or her lender or are in forbearance, Defendant mishandles these routine servicing

changes and, as a result, furnishes inaccurate mortgage payment history information about those transactions to one or more CRAs. This creates the inaccurate and unfair impression that the consumers are delinquent or late in paying their mortgages when they are not.

4. When Plaintiffs and others recognized Defendant's errors in the mortgage payment history information Defendant had furnished to the CRAs, they exercised their rights under the FCRA to dispute those errors, thereby requesting to have them corrected or deleted. However, compounding its initial errors, Defendant failed to correct the inaccurate late payment history it had previously furnished about Plaintiffs and others to the CRAs or to delete it.

5. Defendant further failed to instruct CRAs to mark the disputed, inaccurate late mortgage history payment as "disputed," which minimally would have alerted potential creditors that the disputed mortgage payment history information was contested by the consumers and would not have negatively affected the credit score of Plaintiffs and those similarly situated.

6. As a result of Defendant's conduct, Plaintiffs and others like them expend unnecessary time and resources to dispute inaccurate mortgage payment history information Defendant furnished about them (to no avail, because Defendant fails to correct or delete the errors disputed), had their credit reputations with CRAs and others unfairly tarnished and diminished, and had their credit scores lowered and/or diminished.

7. Defendant's common course of conduct and legal violations entitle Plaintiffs and everyone they seek to represent to statutory, actual, and punitive damages and attorneys' fees and costs under the FCRA.

## II. JURISDICTION AND VENUE

8. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

9. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is located in this District.

## III. THE PARTIES

10. Plaintiff William Horn is an individual who lives in Harrisburg, Pennsylvania. Plaintiff Horn is a "person" and "consumer" as defined by FCRA sections 1681a(b) and 1681a(c).

11. Plaintiff Svetlana Grach is an individual who lives in Philadelphia, Pennsylvania. Plaintiff Grach is a "person" and "consumer" as defined by FCRA sections 1681a(b) and 1681a(c).

12. Defendant Dovenmuehle Mortgage, Inc. ("DMI") is a Delaware corporation. Its headquarters and primary place of business are in Illinois. It is a "person" as defined by FCRA section 1681a(b).

## IV. FACTUAL ALLEGATIONS

*Residential Mortgage Servicing*

13. In the United States, the vast majority of residential mortgage loans are managed by "servicers" such as DMI for the benefit of the loan owners instead of the

3

lenders who lend the money to consumers in the first place. Among servicers' various roles and responsibilities are the collecting and processing of payments, sending monthly statements, keeping track of account balances, handling escrow accounts, engaging in loss mitigation, and prosecuting foreclosures.

14. Servicers often handle "loss mitigation" on behalf of mortgage owners as well. That is, from time to time and pursuant to agreements between a mortgage borrower and her lender or otherwise, the repayment terms of a consumer's mortgage can change.

15. A borrower and lender might, for example, agree to extend the borrower's repayment period in exchange for being allowed to pay a lower amount in each periodic payment.

16. In such circumstances, the borrower's original repayment obligations are superseded by the terms of the agreement modifying the repayment terms of the mortgage loan. If the borrower complies with the amended repayment terms per his or her agreement with the lender, the mortgage account remains in good standing.

17. Sometimes, however, notwithstanding an agreement to modifying the repayment terms of a mortgage loan between a borrower and lender, the mortgage servicer who accept the borrower's payments each month may, ignoring the terms of the modification between the borrower and lender, treat the modified periodic payment as insufficient with reference to the original repayment terms under the borrower's original (or previously modified) mortgage note.

18. In such circumstances, the mortgage servicer may assess late charges and declare the borrower in default on the original repayment terms, notwithstanding the existence of the modified repayment terms that supersede the original terms.

*Consumers' Relevant FCRA Rights*

19. In addition to CRAs such as Equifax, Experian, or Trans Union, the FCRA regulates the conduct of "furnishers," entities such as Defendant that provide information about consumers to CRAs. *See* 15 U.S.C. § 1681i(a)(1)(A).

20. Consumers may dispute the "completeness or accuracy of any item of information" in the file that a CRA maintains about them. 15 U.S.C. § 1681i(a)(1).

21. When a CRA receives a consumer's dispute, it must "provide notification of the dispute to [the furnisher] who provided [the CRA] any item of information in dispute" and "shall include all relevant information regarding the dispute that the [CRA] has received from the consumer[.]" 15 U.S.C. § 1681i(a)(2).

22. Upon receipt of notice of the consumer's dispute from the CRA, the furnisher must "conduct an investigation with respect to the disputed information[,] . . . review all relevant information provided by [the CRA, and] report the results of the investigation to the [CRA]." 15 U.S.C. § 1681s-2(b)(a)(A)-(C).

23. If the disputed information is "found to be inaccurate or incomplete or cannot be verified after any reinvestigation," the furnisher must promptly "modify that item of information," "delete that item of information," or "permanently block the reporting of that item of information." 15 U.S.C. § 1681s-2b(1)(E)(i)-(iii).

5

24. Furthermore, "if the completeness or accuracy of any information furnished by any person to any [CRA] is disputed to such person by a consumer, the person may not furnish the information to any [CRA] without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2b(a)(3).

25. As several circuit courts have held, a furnisher violates FCRA section 1681s-2(b) "when, having received notice of a consumer's potentially meritorious dispute, [it] subsequently fails to report that the claim is disputed." *Seamans v. Temple Univ.*, 744 F.3d 853, 867 (3d. Cir. 2014); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1165 (9th Cir. 2009); *Saunders v. Branch Banking*, 526 F.3d 142, 148-50 (4th Cir. 2008).

26. The furnishing of complete and accurate information about consumers' mortgage payment history is extremely important because most, if not all, credit scoring models assign special significance to that information. A late mortgage payment notation in a consumer's file will negatively affect the consumer's credit score to a greater degree than, for example, a late credit card payment or unpaid medical bill, and can have an outsized effect on a consumer's creditworthiness, including whether she may obtain additional credit or refinance her existing credit obligations, such as a mortgage loan.

*Relevant Provisions of the CARES Act*

27. In 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which, *inter alia*, provided mortgage protections to

6

borrowers with federally backed mortgage loans who were experiencing financial hardship during the COVID-19 public health emergency.

28. Under the CARES Act, mortgage servicers were required to provide borrowers with certain contractual accommodations, including payment deferral and payment forbearance, upon request.

29. The CARES Act also provided certain credit reporting protections for borrowers to whom mortgage servicers granted accommodations. For example, if a borrower was current in her mortgage payments before being granted an accommodation, the furnisher had to continue to report the credit obligation or account as current during the accommodation. Similarly, if a borrower was delinquent before the accommodation, the furnisher could not advance the delinquent status (*e.g.*, from 30 days late to 60 days late) during the accommodation.

30. In November 2022, the Consumer Financial Protection Bureau ("CFPB"), the federal agency responsible for, *inter alia*, enforcement of the FCRA, sued Carrington Mortgage, a non-bank servicer of residential mortgages, for furnishing negative late payment information to CRAs about borrowers whose mortgage loans were subject to an accommodation pursuant to the CARES Act, thereby providing even further notice to mortgage servicers of CARES Act accommodation requirements.

*DMI's Business Practices*

31. DMI is a non-bank servicer of residential mortgage loans. It does not lend money to consumers for the purchase of residential real estate. Rather, on behalf

of lenders and mortgage holders, it accepts consumers' mortgage payments and applies the sums received to consumers' obligations under the note and mortgage.

32. In accordance with its regular business practices, DMI furnishes information concerning consumers' mortgage loan payment history to one or more CRAs.

33. Upon information and belief, notwithstanding the existence of a forbearance agreement between a borrower and her lender (typically facilitated by DMI in any event) or an accommodation pursuant to the CARES Act, DMI routinely reported consumers as late on their mortgage payment obligations and/or advanced the delinquency of such reporting.

34. Upon information and belief, DMI routinely fails to furnish accurate mortgage payment information to CRAs with respect to mortgage accounts that are subject to loss mitigation and/or CARES Act accommodations such as forbearance or payment deferral arrangements.

35. Upon information and belief, DMI's failures are the result of straightforward financial incentives and intentional decisions to minimize compliance-associated expenses and to maximize late fees and other penalties that it assesses to consumers' mortgage accounts.

*Mr. Horn's Experience*

36. In early 2018, Mr. Horn borrowed money to purchase a home, and his lender secured the loan with a mortgage on the property.

37. At all relevant times, DMI was the servicer of Mr. Horn's mortgage loan.

38. From December 2019 until May 2020, DMI furnished inaccurate information about Mr. Horn's mortgage payment history to one or more CRAs, namely that he was late in paying his mortgage on numerous occasions.

39. The information DMI furnished about Mr. Horn was inaccurate because he was at all times in compliance with agreements in place with DMI concerning payment of his mortgage, including various forbearance agreements, including one that was made pursuant to the provisions of the CARES Act and was in effect from April 2020 to June 2020.

40. After Mr. Horn disputed the inaccurate information that DMI had furnished to one or more CRAs, it still failed to correct the information.

41. As a result, Mr. Horn sued DMI under the FCRA for furnishing inaccurate information about his mortgage payment history, and failing to correct it upon dispute, which lawsuit settled in late 2021.

42. In early 2021, DMI stopped servicing Mr. Horn's mortgage, but nevertheless continued to report information about his payment history to one or more CRAs.

43. In December 2022, Mr. Horn reviewed his credit reports and discovered that DMI was still furnishing the very same inaccurate, late mortgage payment history information that he had previously disputed as inaccurate and about which he had sued Defendant.

44. Once again, Mr. Horn disputed the inaccurate mortgage payment history information that DMI had furnished to Experian, a CRA. Upon information

9

and belief, Experian forwarded Mr. Horn's dispute to DMI, consistent with its own FCRA obligations.

45. In response to Mr. Horn's dispute, DMI failed to investigate the inaccurate information it had furnished, failed to correct it, and failed to delete it.

46. DMI also failed to mark the information it had furnished as "disputed."

47. Months later, the inaccurate information remained in Mr. Horn's Experian credit file.

48. As a direct and proximate result of DMI's conduct, Mr. Horn suffered harm, including the loss of time and resources associated with disputing the inaccurate information DMI had furnished, and harm to his credit reputation and credit score.

49. At all relevant times, DMI acted through its duly authorized agents and/or employees with respect to the above-alleged conduct.

*Ms. Grach's Experience*

50. Ms. Grach borrowed money to purchase a home, and her lender secured the loan with a mortgage on the property.

51. At all relevant times, DMI was the servicer of Ms. Grach's mortgage loan.

52. From approximately March to November of 2023, DMI furnished inaccurate information about Ms. Grach's mortgage payment history to one or more CRAs, namely that she was late in paying her mortgage on numerous occasions.

10

53. The information DMI furnished about Ms. Grach was inaccurate because she was at all times in compliance with agreements in place with DMI concerning payment of her mortgage, including one or more forbearance agreements made pursuant to the provisions of the CARES Act.

54. On at least two occasions in 2023, Ms. Grach disputed the inaccurate information that DMI had furnished to one or more CRAs.

55. Upon information and belief, the CRAs to which Ms. Grach had sent her disputes forwarded them to DMI consistent with their own FCRA obligations.

56. In response to Ms. Grach's disputes, DMI failed to investigate the inaccurate information it had furnished, failed to correct it, and failed to delete it.

57. As a direct and proximate result of DMI's conduct, Ms. Grach suffered harm, including the loss of time and resources associated with disputing the inaccurate information DMI had furnished, and harm to her credit reputation and credit score.

58. At all relevant times, DMI acted through its duly authorized agents and/or employees with respect to the above-alleged conduct.

*The Experiences of Other Consumers*

59. Many consumers have submitted complaints to the CFPB concerning situations like Plaintiffs': notwithstanding a forbearance, payment deferral, or other contractual accommodation, including those offered pursuant to the provisions of the CARES Act, DMI reported inaccurate late mortgage payment information to one or more CRAs about these consumers.

60. In a complaint submitted to the CFPB on September 8, 2022, a consumer wrote as follows:

> A complaint was submitted in XX/XX/XXXX regarding incorrect reporting of late payments on my credit report. The response from Dovenmuehle Mortgage, Inc., XXXX, is not following the rules of the Cares Act. As indicated in my original complaint, my payments are being reported as past due after entering into a payment modification relief program that is part of the federal Covid relief and in the state of Georgia called the XXXX program.

61. In a complaint submitted to the CFPB on January 23, 2022, another consumer wrote as follows:

> We have confirmed our mortgage is owned by XXXX XXXX and was eligible for Covid-19 forbearance program starting XX/XX/2020 via the CARES Act. Per the CARES Act, all eligible mortgages were granted a maximum 18 month forbearance. On XX/XX/2020 we contacted our previous mortgage servicer ( Dovenmuehle Mortgage, Inc. ) about covid-19 forbearance. They gave us the run around from the start ( threating us with foreclosure ), but eventually transferred our mortgage service to XXXXXXXX XXXX in XX/XX/2020. . . . Recently we went to obtain our credit reports and Dovenmuehle reported our payment status as 120 days delinquent on XX/XX/2020 ; which greatly affected our FICO scores.

62. In a complaint submitted to the CFPB on August 16, 2020, another consumer wrote as follows:

> I have a signed and executed Forbearance Agreement with Dovenmuehle Mortgage stating we have to pay {$0.00} XXXX, XXXX and XXXX XXXX payment due to COVID-19. I then paid on time my XXXX and XXXX XXXX payments. BUT the Mortgage company, IN ERROR, reported me 90 DAYS LATE to all three Credit Reporting Agencies. Upon contacting my mortgage company, which took 6 different people and almost 7 hours of phone calls ... I finally reached XXXX XXXX, a Manger (*sic*) and he admitted that they in error didn't not report the the (*sic*) credit bureaus the proper information for many of their customers in Forbearance. He gave us a verbal and it was on their recorded line and he advise me that another department would mail us a letter in 5-7 business day stating such. Problem it (*sic*) that due to their error, my score dropped from the mid to high 700s to the low to mid 600s!!! This

caused me NOT to obtain a Mortgage Pre-Qualification letter and I lost the home that I put an offer on! I need help ASAP as I CAN NOT wait 30 days for my score to rebound and the Mortgage company is not willing to do anything to help!

63. In a complaint submitted to the CFPB on October 12, 2020, another consumer wrote as follows:

> My mortgage loan is with with (*sic*) Dovenmuele Mortgage[.] This complaint is due to a discrepancy within my credit which was reported by Dovenmuehle. After several telephone calls and conversations, customer service representatives state they do not have access to, or can not see, my credit report and therefore can not correct this mistake. I have emailed Dovenmuele six times regarding this error.
>
> The company has been adding delinquent charges to my credit report for months. I received a letter in the mail on XX/XX/2020 explaining that the Company has transferred my Dovenmuele mortgage to another mortgage company. While I accept the changes, the company has reported the sum transferred as a delinquency on my credit report. Dovenmuele has also reported an erroneous amount of {$250000.00} in delinquency when the amount owed is for the sum {$23000.00} XXXX this was the amount transferred to the new mortgage company ). Additionally, Dovenmuele has failed to report my account in good standing for the months of XXXX, XXXX, XXXX and XX/XX/2020.
>
> I have contacted Dovenmuele regarding these issues on XX/XX/XXXX, XX/XX/XXXX, XX/XX/XXXX, XX/XX/2020 and Dovenmuele still has not rectified the problem. Instead, the issues are now heightened. Since my last emails, Dovenmuele has been adding further negative credit reportings (*sic*) on to my credit rating status ; in turn putting further stress on my financial situation.

64. In a complaint submitted to the CFPB on August 7, 2020, another consumer wrote as follows:

> After being approved for forbearance from XXXX/DovenMuehle Mortgage/XXXX due to Covid19, waiting 45 days with no response to move payments to end of loan, then making a payment, getting several conflicting answers and then being put back on forbearance, loan has now erroneously and illegally in direct violation of the CARES ACT been reported by that company to the Credit Bureaus as delinquent as of XX/XX/2020.

65. In a complaint submitted to the CFPB on August 13, 2020, another consumer wrote as follows:

> About three weeks ago I was contacted by credit bureaus due to a change in my rating that reduced my credit score by XXXX points. It appears that Dovenmuehle Mortgage has reported that my thirty year fixed rate loan has been increasing by over {$4000.00}. My loan is in forbearance and as per Accommodations under The Cares Act and XXXX XXXX regulations, the overdue amounts are not to be reported to credit bureaus since they will be eventually either be paid in full, paid in installments or added to the end of the loan. . . . I have contacted Dovenmuehle via telephone and email on XX/XX/XXXX, XX/XX/XXXX and again on XX/XX/2020 but have received no response. Since my last attempt to reach them ; the company has yet again added additional charges that seem like an increase on my loan or a delinquency.
>
> Unfortunately, my family has suffered loss of income and salary, have contracted XXXX ( XXXX included ) and are struggling to make ends meet. Therefore, at this time, my credit score and credit line is extremely important because it can help us pay for groceries and support us in staying afloat financially. This situation is placing further financial hardship in our lives.

66. In a complaint submitted to the CFPB on November 10, 2020, another consumer wrote as follows:

> Due to COVID19 issues I was furloughed from my current job I contacted Dovenmuehle Mortgage, our current loan holder at the time, an (*sic*) was approved and received forbearance position on XX/XX/2020 and continued to be extended through XX/XX/2020, as shown by their letter dated XX/XX/12020. They assured me they would correctly report our position to the 3 credit bureaus and would not receive any late payments. When we recently checked our credit both XXXX and XXXX are showing 120 day lates (*sic*). This has totally disrupted our lives and has dropped our credit score over 100 points. I have gone on record with over 30 phone calls ( all recorded and documented ) over the last 60 days into Dovenmuehle and, even though they confirm they made the mistake, they refuse to email me a simple 1 page letter I have been been (*sic*) requesting so I can clear my credit. . . . They also confirmed on recorded conversations I am not the only borrower they made these mistakes with during this time. I hope others who read this complaint that have had these same issues will join me in this complaint so that everyone will know the pain and suffering me and my family have

experienced. Dovenmuehle is an irresponsible, inconsiderate company I have ever worked with!! They are a disgrace to the industry and I truly hope this complaint helps to discredit their name for everyone to witness!! Do not walk but run from this company so you never have to me treated as horribly and me and my family!

## V. CLASS ACTION ALLEGATIONS

67. In light of the above, Plaintiffs assert that this matter is suitable for class action treatment.

68. Plaintiffs will seek the certification of a class of similarly situated consumers:

(a) Who had a mortgage account serviced by Defendant;

(b) Who entered into a forbearance agreement with Defendant pursuant to the CARES Act such that during a specific period, no payments were due from the consumer to Defendant on their mortgage account;

(c) About whom, during such a forbearance period in which no payments were due, Defendant furnished inaccurate late payment history information about them to one or more CRAs;

(d) Whose credit reputations were harmed by Defendant's inaccurate late mortgage payment history information;

(e) Who expended time and effort disputing the inaccurate late payment history information that Defendant furnished to a CRA about them during the forbearance period in which no payments were due;

(f) Defendant received notice of the consumers' disputes from the CRA, such as through the ACDV process;

15

(g)     Defendant responded to the consumers' disputes to the CRAs, having failed to correct or delete the inaccurate late payment history information;

(h)     In its response to whose disputes to the CRAs, Defendant failed to mark the disputed account information as "disputed."

69.     Plaintiffs reserve the right to tailor the above profile of the class or classes based upon developments in discovery or as otherwise appropriate and permitted and will propose a specific class definition in connection with their anticipated motion for class certification as permitted by FED. R. CIV. P. 23.

70.     **Numerosity.** The members of the class or classes are so numerous that joinder of all is impracticable. Upon information and belief, the number of consumers harmed by Defendant's practices are so numerous that joinder would be impracticable, and the names and addresses of members of the class or classes are identifiable through documents or other information maintained by Defendant.

71.     **Commonality and Predominance.** Common questions of law and fact exist as to all members of the class or classes and predominate over the questions affecting only individuals. These include, without limitation, whether DMI furnished late payment notations about members of the class or classes to one or more CRAs; whether members of the class or classes disputed those late payments notations; whether DMI failed to correct or delete those late payment notations; whether DMI's conduct was negligent, willful, or reckless; and whether members of the class or

16

classes are entitled to statutory, actual, and/or punitive damages, and in what amounts.

72. **Adequacy**. Plaintiffs are adequate representatives of the class or classes because their interests are aligned with, and are not antagonistic to, the interests of the members of the class or classes they seek to represent. Plaintiffs have retained counsel competent and experienced in such litigation and they intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of members of the class or classes.

73. **Superiority.** A class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member class or classes are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the class or classes to individually redress effectively the wrongs done to them. Even if the members of the class or classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proofs in a unified proceeding.

## VI. <u>CLAIMS FOR RELIEF</u>

### COUNT I

On Behalf of Plaintiffs and Members of the Class or Classes for
Defendant's Failure to Correct or Delete Disputed Information in
Violation of 15 U.S.C. § 1681s-2(b)

74. Plaintiffs incorporate the foregoing paragraphs as though set forth at length herein.

75. After it received notice from one or more CRAs of a dispute from Plaintiffs and members of the class or classes of inaccurate late mortgage payment information that Defendant previously furnished to one or more CRAs, Defendant negligently or willfully failed to correct or delete the inaccurate late payment history, in violation of FCRA section 1681s-2(b).

76. Defendant is liable to Plaintiffs and members of the class or classes for all relief available pursuant to FCRA sections 1681n and 1681o.

### COUNT II

On Behalf of Plaintiff Horn Individually for
Defendant's Failure to Mark Disputed Information as "Disputed" in
Violation of 15 U.S.C. § 1681s-2(b)

77. Plaintiff Horn incorporates the foregoing paragraphs as though set forth at length herein.

78. After it received notice of having furnished inaccurate late payment information to one or more CRAs about Plaintiff Horn, Defendant negligently or willfully failed to mark the disputed information as "disputed," in violation of FCRA section 1681s-2(b).

79. Defendant is liable to Plaintiff Horn for all relief available pursuant to FCRA sections 1681n and 1681o.

## VII. JURY TRIAL DEMAND

80. Plaintiffs demand trial by jury on all claims so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment in their favor and against Defendant as well as an award of the following relief:

A. An order certifying this matter as a class action on behalf of a class or classes and appointing Plaintiffs and their counsel to represent them;

B. Actual damages, statutory damages, punitive damages, and attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o;

C. Pre-and post-judgement interest as may be allowed by law; and

D. Such other and further relief as may be necessary, just, and proper.

DATED: September 5, 2025         Respectfully submitted,

WILLIAM HORN and SVETLANA GRACH, Plaintiffs, by their attorneys,

*/s/John Soumilas*
John Soumilas
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: 215.735.8600
jsoumilas@consumerlawfirm.com

Jordan M. Sartell (ARDC No. 6310097)
FRANCIS MAILMAN SOUMILAS, P.C.
310 South County Farm Road, Suite H
Wheaton, IL 60187
T: 215.735.8600
jsartell@consumerlawfirm.com

19